All right, we'll next move to the third case of the day, Robert Taylor against Ricky Hughes and others. Appeal number 20-2377. Ms. Dimkar, when you're ready. Please the court. I'm Irene Dimkar and I represent Robert Taylor. There were cross motions here for summary judgment. The court allowed and granted defendants three successive summary judgment motions and denied plaintiff's motion for summary judgment. Plaintiff is asking that this court reverse the decision below. I'd like to start with constructive possession. There's no probable cause to arrest Robert Taylor for constructive possession of a firearm. He spent four months in jail awaiting trial. He was charged as an armed habitual criminal. He lost his job, his apartment, he lost everything. And it's important to know some facts here about the raid. The police raid took place at 6 a.m. in the morning. The police found in bedroom number two, this is the diagram that the police drew, bedroom number two, five people in bed, two adults, Mario Barnes and Barbara Taylor, and their three children, ages 16, 10, and 7. Mario Barnes was on parole. In bedroom number two was Barnes' safe. It was unlocked. And inside the safe was a blue steel Glock 9mm semi-automatic pistol. It was unlocked and open, too, wasn't it? Isn't that what the evidence was? Yes. Yes. There was no one in bedroom number one, but all the personal property for Robert Taylor was in bedroom number one. Taylor was not home at the time. The police were told that. They were told that Taylor had not been there at the home since the afternoon the day before. The sergeant overseeing the raid, Kevin Johnson, said he didn't think it was probable cause to arrest anybody and he didn't know that an investigative alert was going to be issued. Officer Ricky Hughes testified he didn't have probable cause to arrest Barnes or Barbara Taylor because he never saw them in possession of a weapon. So the irony is obvious. He didn't think he has probable cause to arrest the people who were in the room with the gun, including someone who was on parole, but then for sure he didn't have probable cause to arrest Taylor who was not home and had no control over Barnes' bedroom. The court said the evidence of constructive possession was thin. The court said there's no evidence of Taylor's specific control over the bedroom with the gun, but the court pointed to two things, just two things. Number one, that Taylor lived in the apartment. He said that's some circumstantial evidence that he knew something about the gun. And number two, that the safe was unlocked and that put him in constructive possession. The defendants make the same argument that he lived in the apartment and the safe was unlocked. Ms. Dimkar, on this argument in your briefing, you rely fairly heavily on federal case law of constructive possession, but the probable cause here in the arrest warrant was based on Illinois constructive possession and Illinois courts have interpreted constructive possession a little differently than the federal courts. So why should we rely on your arguments with respect to federal law when this is an Illinois statute? They had probable cause or they're arguing probable cause for. Your Honor, I think that both federal and state law apply here. The issue is probable cause. Why would federal law apply when they were executing a state warrant, he was charged state with possession, and Illinois courts really have construed constructive possession differently than I read what the federal courts have done? Your Honor, I believe it's both laws. Why would federal law apply then, if you're arguing for that? Because the issue is probable cause and the probable cause issue would also engage federal law. If you're talking about the elements of the crime, it would be state law. First of all, I'd like to talk about Robert Taylor living in the apartment and what is important was he was not even home during the raid and there's no proof that he was ever in the apartment at the same time that that gun was in the safe. There's no proof at all of that. He never knew anything about a gun in Barnes' safe in Barnes' bedroom. There's no... Ms. Dimkar, I think you're making a fair point on the straight up probable cause. I have a similar question to Judge St. Eve and let me just state it a little bit differently. Why is there no qualified immunity given the state of Illinois law that the district court discussed? In other words, why is Judge Shah's reasoning at appendix A2, pages 20 and 21, why does that reflect legal error on the qualified immunity issue? Well, the qualified immunity issue requires that a reasonable officer would not have reasonably believed the probable cause existed. Right, that's the test that Judge Shah stated and then he talks about Illinois case law, that people may be found in constructive possession even when others have more direct access to an item that's recovered. I think your primary argument, you're right about. I think that what you need to persuade, at least me of, is that the qualified immunity analysis in the district court opinion reflects a legal error. Well, we believe it's a legal error because of the, if I could just flip to the factual basis, the factual basis is that he lived in the apartment and that the safe was open. He's not there at the time and there's no, he has no connection. That's the same argument that was made to the district court and the district court came back at you and said, it's not that I don't understand it, it's that you face, you face the following precedent under Illinois law and found qualified immunity on the basis of that state law precedent. Your Honor, I think that the state law is similar enough to say that mere residency is not enough. You need something else. But the Illinois appellate court has said the opposite, that habitation in the premises where contraband is discovered is sufficient evidence of control to constitute constructive possession. So for the qualified immunity analysis, there has to be, if there's arguable probable cause, then qualified immunity would apply. Given that very broad definition, which I think federal law is different, but given that very broad definition or construction that Illinois courts have given it, why wouldn't that apply here? I think that no reasonable officer would have thought under these circumstances that there was probable cause. If you, mere residency, you need something else. You need some kind of plus factor. You need access. You need knowledge. You need connection with the location. You need connection with the contraband. You need something, something else, not just that this was your apartment and you're not there and there's no proof that he was there at the same time as the congressman. What about the information from the John Doe? Would that have been enough to tip it for probable cause purposes or qualified immunity under probable cause? Well, first of all, what John Doe said, John Doe was talking about a different gun if it happened. I mean, Robert Taylor denies that that was true. But if it happened, he's talking about a different gun. There's no connection between the gun and the informants that he saw and the blue steel semi-automatic in the safe. We also question the John Doe's veracity, his reliability, his veracity and the information he had. And so some of the issues in this case kind of overlap. We think that there's no way that Ricky Hughes should have believed this John Doe informant. We don't even know who he is. Thank you. That was my question. Did any evidence come out? I didn't see it. So did any evidence come out about John Doe and who he was? I know there was evidence that Officer Hughes met him for the first time that another officer had talked to him. He was a C.I. But beyond that do we know anything about John Doe or his relationship to Mr. Taylor? I didn't see it. Absolutely not. And that's a big problem. And that goes into the issue about the good faith exception to the particularity requirement. But John Doe just dropped out of the sky. Nobody knew who he was. Ricky Hughes said Detective Weitzman handed him off to me. Weitzman said that never happened. I never talked to an informant and I never talked to Ricky Hughes. So the informant is there and Ricky Hughes talks to him for 20 minutes. We don't have his notes. He destroyed his notes. He destroyed the criminal history. He destroyed the photographic array. We don't know anything about the John Doe. But I think going to your question Judge Saini what information did he have? What was his relationship with Robert Taylor? How many times had he gone to this house? And why would a 40-year-old man pull out a gun and say see what I got? You know someone who's been through the prison system that was in his past but you know a teenager does that. A 40-year-old person doesn't do that. I mean there were things that just didn't add up with him saying there's a gun there on the south side and the circumstances of course of how this informant appeared. It was in the middle of a chaotic situation. This was a roundup after months of investigation of drug dealers in the north side the far north side and somehow there is this person we don't even know who he is that appears out of nowhere no one seems to vouch for him no one vetted him he's just there. Was he charged in connection with that roundup on the north side or we don't know? We don't know. We don't know that's the problem. If we had his criminal history we might be able to tell but we don't know I suspect that he was there for a reason he was there because he was part of the roundup and for some reason he wanted to gain favor with the police. We don't know what his motive is but I'm saying circumstantially he's there at the same time as people are being arrested arrest warrants are being dozens of arrest warrants are being prepared for this drug investigation on the north side and all of a sudden there's this informant coming out of nowhere saying I know about a gun on the south side and Ricky Hughes this hapless creature hapless officer he was just someone just gave him the informant and he talked to the informant he didn't know anything and that should have been told to the judge the judge should have been told I don't know this person and I don't know anything about him. He may have been we don't know what happened with the judge because it happened in the car and wasn't recorded it wasn't in the application for the search warrant Ms. Dimkar I apologize but given our limited time there's one issue would you mind if I switch you on an issue to get the benefit of your reaction to this it's on the December false arrest and the and specifically the defendant Detective Weitzman okay the district court determined that Detective Weitzman was entitled to qualified immunity you argue that that was improper because there are material facts that remained unresolved that remained with respect to his role what exactly are the unresolved material facts well what don't you know that you think creates a jury issue our argument is a little bit more elaborate than that because we say that qualified immunity does not apply to an issue such as causation it's clear that his constitutional rights were violated his constitutional rights I agree with that okay so but causation doesn't come under qualified immunity it's a factual issue did he cause it to happen and the judge to begin with judge the court the district court said that okay I'm sorry you were here's just to go right to the okay comparing contrasting all that but as I read detective Joshua Weitzman's deposition testimony at page 142 he testified that he he never received knowledge after the June arrest he didn't receive knowledge of the June arrest okay now if that's I don't know how there's there's any basis for liability with respect to the December false arrest in other words how is it that he engaged in intentional misconduct that would have committed this constitutional violation if he you the causation issue is an issue for the jury if you start the ball rolling are you supposed to expect someone else to stop the ball rolling okay and who testified that he shoulders that affirmative ongoing monitoring obligation it's in the special investigation of the   don't know the details of the testimony but I read the totality of the testimony to be that someone in the bureau of investigative services has to be informed that there is an arrest and therefore in a position to know to pull down the investigative alert your honor I think this goes hand in hand with our issue regarding the investigative alert we're saying if no individual if if there is a duty to monitor more than negligence on his part your honor I think the issue of causation is an issue for the jury if you put an investigative alert into the computer that's equivalent of a warrant and then do nothing to monitor it and do nothing to follow it as it goes through I think that is a problem but I do I've run out of time but I did want to talk about the investigative alert and the Monal claim and the city's responsibility is even more enhanced because if everybody says I don't know who I didn't want to be arrested there's no sign who put it into the computer why it was put into the computer I never asked for an investigative alert nobody knows how it got into the computer I don't know who put it into the computer I never asked for an investigative alert I never asked for an investigative alert I never asked for an investigative alert for  computer to connect it back    person I never asked for an investigative alert I  asked for an investigative alert but in this case I never asked for an investigative alert   this case I never asked for an investigative alert but in this case I never asked for an investigative alert I did not  for an investigative alert role. So this is not what happened here in December. So this is what happened here in December. And I don't see anybody taking responsibility for that. Well, what happened in this case is that, I understand her arguing about two policies, not even requiring probable cause, and there's a problem with the audits. There's a problem  audits. There's an implied policy of no audits. And for an applied policy under Ronell, the plaintiff must show something, usually a pattern of practice to alert municipal policy makers. I mean, there's something that went awry here. This is an utterly predictable consequence of not conducting audits, right? I don't necessarily agree with that for a couple reasons. One reason is if things are done correctly on the front end, then this won't happen. The audit isn't the only insurance under the special order. There's a chain  communication written out in the special order that requires first, the field officer is required to notify the detective unit, and then when that's reported to the hot desk, then that unit is responsible to respond, conduct follow-up investigation, and to ensure that a supervisor is notified in the event that an investigative alert is to be updated or canceled. So that policy instructs supervisors to update or cancel as necessary, and you can even see in the work logs that are in the record at R93-2 that there is a system, there's this log where the boxes are checked when the field officers call in about who is notified, and you go all the way across to the    you go back and check the log. And of course the fact that audits weren't conducted every 28 days doesn't show that whatever was going on was so obvious that policy makers knew what was going on. This is a real case.   fact that there was no   not enough to  that policy makers knew what was going on. And the fact that there was no audits was not enough to show that policy    was going on.  the fact that   audits every 28 days doesn't show that policy makers knew what was going on. And the fact that there was no audits  28 days doesn't        on. And the fact that audits was going on. And  that audits every And  that audits every 28 what was  on. And the fact that audits every 28 days doesn't show that policy makers knew what was going on. And     28 days doesn't    knew what was on. And the fact that audits every 28 days doesn't show that policy makers knew what was on. audits   doesn't show that policy audits  28 days doesn't show doesn't show that policy  knew what  show that policy   what was on. And